**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HERITAGE HILLS ASSOCIATES,**<br><br>**Plaintiff,**<br>**v.**<br><br>**CROWN BANK and JACINTO RODRIGUES,**<br><br>**Defendants.** | **Civil Action No. __________** |

**COMPLAINT**

Plaintiff Heritage Hills Associates ("Heritage Hills" or "Plaintiff"), by and through its undersigned counsel, brings this Complaint against Defendants Crown Bank (the "Bank") and Jacinto Rodrigues ("Rodrigues" and, together with the Bank, "Defendants"), and in support thereof alleges as follows:

**NATURE OF THE ACTION**

1. This action arises from a scheme by a financially distressed New Jersey bank to trap a commercial borrower in its loan portfolio by manufacturing a $1,378,974.68 retroactive "default interest" charge which the Bank concealed for more than three years and disclosed for the first time only when Heritage Hills sought to refinance with a competing lender.

2. For more than eleven years, Heritage Hills made the monthly payments on a $10 million commercial real estate loan secured by the Heritage Hills Golf Resort and Conference Center in York County, Pennsylvania, and the Bank accepted every payment.

3. The Bank never declared a monetary or other default, never accelerated the loan, never demanded a replacement guarantor or additional collateral, and never took any collection action. The Bank's own monthly billing statements — through and including its June 17, 2026 statement — bill the loan at the ordinary contract rate and reflect a current, performing loan.

4. The Bank's asserted basis for its springing seven-figure "default interest" demand is the January 30, 2023 Chapter 7 bankruptcy filing of one minor guarantor, Timothy Barley.

5. But under Section 7(a) of the parties' Loan Agreement, an enumerated occurrence such as the bankruptcy filing of a guarantor "shall, at the sole option of the Bank, constitute an Event of Default." Accordingly, no "Event of Default" exists unless and until the Bank exercises that option.

6. Here, the Bank's Chief Executive Officer, Defendant Rodrigues, admitted in writing on May 29, 2026 that the Bank "opted at this time" — i.e., in 2026 — "to exercise the Event of Default." A 2026 election cannot trigger three

years of retroactive default-rate interest out of a period during which, by the contract's plain terms and the Bank's own admission, no Event of Default existed.

7. The timing and manner of the Bank's conduct reveal its purpose. Within weeks of Mr. Barley's November 7, 2023 bankruptcy discharge, the Bank quietly modified the boilerplate in its billing statements purporting to "reserve" unspecified default-interest rights — while never identifying any Event of Default, never quantifying any charge, and continuing to bill and collect at the ordinary contract rate.

8. In November 2025, Rodrigues met with Heritage Hills' principal concerning an increase in the credit facility and said nothing about any accruing seven-figure liability. Only on May 21, 2026, when Heritage Hills requested a payoff statement to close a refinancing with a competing lender, did the Bank first disclose its demand: $9,514,500.89 against a principal balance of approximately $7.9 million, including $1,378,974.68 in purported retroactive default interest and $394,890.44 in prepayment charges.

9. The Bank then ignored a written demand from Heritage Hills' counsel to correct the payoff statement and torpedoed a scheduled June 12, 2026 refinancing closing. The Bank's inflated payoff demand prevents Heritage Hills from refinancing, trapping it in a lending relationship with a dishonest institution whose

regulatory filings reveal severe financial deterioration and a powerful motive to prevent performing loans from leaving its portfolio.

10. Heritage Hills brings this action for a declaratory judgment fixing the lawful payoff amount; for breach of contract, including breach of the duty of good faith and fair dealing; for tortious interference with prospective contractual relations; and for fraud and, in the alternative, negligent misrepresentation.

## PARTIES

11. Plaintiff Heritage Hills Associates is a Pennsylvania limited partnership with an office at 2700 Mount Rose Avenue, York, Pennsylvania 17402. Its sole general partner is Heritage Hills Recreation LLC, a Pennsylvania limited liability company whose sole member is Matthew J. DeRose, who is a citizen of and domiciled in Pennsylvania, and its limited partners are Joann DeRose, Lois Gable, Keith Klein, Yvonne Rudy, Matthew DeRose, Mia DeRose, Michael DeRose, Robert Pullo, Frederick Schultz, Sherman Keeney II, each of whom is a citizen of and domiciled in Pennsylvania, Mark Wooley and Steven Gumenick, each of whom is a citizen of and domiciled in Florida, George Klein, who is a citizen of and domiciled in Maryland, and MGM Enterprises, Inc., a Pennsylvania corporation with its principal place of business in Pennsylvania.

12. Heritage Hills is the sole owner in fee of real property that secures the Loan described below (the "Mortgaged Property"), the sole mortgagor under the Mortgage, and the original borrower/obligor under the Loan Documents.

13. Two entities are co-obligors with Heritage Hills on the Loan but are not parties to this action. Under the 2020 Modification described below, Heritage Hills Businesses Limited Partnership ("HHB LP") and Heritage Hills Businesses I LLC ("HHB I") were joined as co-borrowers, and the Amended and Restated Promissory Note defines Heritage Hills, HHB LP, and HHB I, "collectively, jointly and severally," as the "Borrower." HHB LP and HHB I are referred to hereinafter together as the "Co-Borrowers."

14. The Co-Borrowers are not required parties under Federal Rule of Civil Procedure 19(a). Their liability on the Note is joint and several with that of Heritage Hills, and complete relief on every claim asserted herein can be accorded between Heritage Hills and Defendants: Heritage Hills is the mortgagor and the owner of the Mortgaged Property; the right to prepay the Loan, to receive an accurate statement of the amount required to do so, and to obtain satisfaction of the Mortgage and release of the collateral upon such payment is Heritage Hills' own right under the Loan Documents; and the damages sought are for injuries sustained by Heritage Hills.

15. Heritage Hills sues solely in its own right. Because the Bank holds a single, joint-and-several claim under the Note, the absence of the Co-Borrowers exposes no party to any risk of double, multiple, or otherwise inconsistent obligations.

16. Defendant Crown Bank is a state-chartered New Jersey Banking Corporation with its principal place of business at 27 Prince Street, Elizabeth, New Jersey 07208.

17. Defendant Jacinto Rodrigues is the Chief Executive Officer of Crown Bank and, upon information and belief, a citizen of and domiciled in the State of New Jersey.

18. Rodrigues personally directed, participated in, and ratified the wrongful conduct alleged herein, including by authoring the Bank's May 29, 2026 written position and by concealing the Bank's undisclosed default-interest position at a November 2025 meeting he personally attended.

## **JURISDICTION AND VENUE**

19. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the damages exceed $75,000 and there is complete diversity between Plaintiff and Defendants.

20. This Court has authority to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, as an actual and justiciable controversy exists between the parties concerning their rights and obligations under the Loan Documents.

21. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this District and the real property that is the subject of the action is situated in York County, Pennsylvania, within this District. The Loan Documents are governed by Pennsylvania law, the mortgaged property is operated in this District, and the injury was suffered in this District.

22. This Court has personal jurisdiction over the Bank because the Bank regularly transacted business in Pennsylvania, made a loan secured by Pennsylvania real property, recorded its mortgage in York County, contracted with a Pennsylvania entity under Pennsylvania law, and directed the conduct at issue — including false and misleading billing and payoff statements — at a Pennsylvania resident.

23. This Court has personal jurisdiction over Rodrigues because he personally directed tortious conduct at a Pennsylvania resident, including written communications sent to Heritage Hills in Pennsylvania, and personally participated in a course of dealing with a Pennsylvania borrower concerning Pennsylvania real property.

## FACTS

### A. The 2014 Loan

24. On November 21, 2014, Heritage Hills closed a $10,000,000 commercial real estate loan with the Bank, designated Loan No. 140003149 (the "Loan"), evidenced and secured by, among other documents, a Loan Agreement (the "Loan Agreement"), a Promissory Note (the "Note"), and an Open-End Mortgage and Security Agreement (the "Mortgage") recorded on November 24, 2014 in the Office of the Recorder of Deeds of York County, Pennsylvania at Book 2300, Page 4560 (collectively, with all related documents, the "Loan Documents"). True and correct copies of the Loan Agreement, Note, and Mortgage are attached as Exhibits A, B, and C, respectively.

25. The Loan bore interest at a fixed rate of 5.50% per annum, calculated on a 365/360 basis, with an original maturity date of December 2, 2024. Matthew DeRose and Joann DeRose guaranteed the Loan. The Loan is governed by Pennsylvania law and is secured by the Mortgaged Property — commercial real property in York and Springettsbury Townships, York County, Pennsylvania, the site of the Heritage Hills Golf Resort and Conference Center — together with personal-property collateral in which the Bank claims a security interest under the Mortgage's security-agreement provisions and related Uniform Commercial Code filings.

**B. The 2020 Modification and Joinder**

26. In November 2020, within the original term of the Loan, the parties executed a Modification and Joinder Agreement and an Amended and Restated Promissory Note (together, the "2020 Modification"), true and correct copies of which are attached as Exhibits D and D1, respectively.

27. Under the 2020 Modification: (a) HHB LP and HHB I were joined as co-borrowers, jointly and severally liable with Heritage Hills; (b) Matthew and Joann DeRose reaffirmed their guaranties, and Rhoda DeRose, Timothy Barley, Benjamin Sheppard, Jason Motter, BSM Holdings LLC, and BSM Holdings Group LLC were added as guarantors; (c) the principal balance was restated at $8,962,367.33; (d) the maturity date was extended to December 2, 2030; and (e) the 5.50% fixed rate was continued through December 1, 2025, after which the rate would adjust to the NYFHLB Index plus 250 basis points, subject to a 5.50% floor.

**C. Eleven Years of Continuous Performance**

28. Since the Loan closed in November 2014, Heritage Hills has made the monthly payments of principal, interest, and escrow due under the Loan, and the Bank has accepted every payment.

29. The Bank has never issued a notice of default, never declared a monetary or other default, never demanded a replacement guarantor or additional collateral, and never taken or threatened any collection action of any kind.

30. Effective December 2, 2025, the interest rate adjusted, per the 2020 Modification, to 6.21% per annum (the NYFHLB Index of 3.71% plus 250 basis points), and the monthly payment increased from $76,041.37 to $79,268.06. Heritage Hills paid, and the Bank billed and accepted, the adjusted payment without objection or any notice of default.

31. The Bank's monthly billing statement dated June 17, 2026 — issued nearly a month after the Bank's payoff demand described below — reflects an unpaid principal balance of $7,897,808.68, a scheduled next payment of $79,268.06 at the 6.21% contract rate, and no delinquency, no default-rate accrual, and no default-interest line item of any kind. True and correct copies of representative monthly billing statements are attached as composite Exhibit E.

**D. The Barley Bankruptcy and the Bank's Three Years of Silence**

32. On January 30, 2023, guarantor Timothy Barley filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Pennsylvania, Case No. 1:23-bk-00190. Mr. Barley scheduled the Bank as a creditor holding a claim of approximately $8.7 million characterized as personal liability for corporate debt and identified Plaintiff and other obligors as co-debtors. Mr. Barley received his Chapter 7 discharge on November 7, 2023.

33. At no time in 2023, 2024, or 2025 did the Bank notify Heritage Hills or any other obligor that it considered the Barley bankruptcy filing an Event of Default; that it had exercised, or intended to exercise, any option to declare an Event of Default; or that default-rate interest was accruing, would accrue, or would ever be claimed. The Bank issued no notice of default, did not accelerate, did not demand a replacement guarantor or additional credit support, and continued to bill for — and accept — monthly payments at the ordinary contract rate.

**E. The Bank's December 2023 Boilerplate Change**

34. The Bank's conduct in the weeks following Mr. Barley's discharge demonstrates that its later-claimed position was the product of deliberate concealment rather than oversight. Within approximately six weeks of the November 7, 2023 discharge, the Bank changed the boilerplate on its monthly billing statements.

35. Beginning with the billing statement dated December 18, 2023, and continuing thereafter, the statements carried the following legend: "Notice: If the below statement is in conflict with any terms of the loan note, the loan note will govern. If any default interest rate is due, the Bank does not waive its collection right by not collecting at this time and will collect said interest at maturity or at paid off."

36. This legend did not declare an Event of Default, did not state that the Bank had exercised or would exercise an option under Section 7(a) of the Loan Agreement, did not identify the Barley bankruptcy or any other occurrence, did not state that default interest was in fact accruing, and did not quantify any amount.

37. It was, by design, a conditional, hypothetical statement ("if any default interest rate is due") calculated to be ignored by a performing borrower — while the Bank lied in wait intending to treat it as the foundation for a seven-figure claim to be sprung at payoff.

38. Upon information and belief, the Bank's insertion of this legend within weeks of the Barley discharge reflects that the Bank had, by December 2023, specifically considered whether to exercise its option to declare an Event of Default based on the Barley bankruptcy and had deliberately elected not to do so — choosing instead to remain silent, keep the fully performing Loan on its books at the contract rate, and preserve a concealed, contingent claim to be deployed if and when Heritage Hills, the owner and mortgagor, attempted to refinance.

### F. The November 2025 Meeting: The Bank Solicits More Business While Concealing Its Position

39. In November 2025 — two years after the Barley discharge — Defendant Rodrigues, the Bank's Chief Executive Officer, met in person at the Bank's offices in Elizabeth, New Jersey with Matthew DeRose, the sole member of the limited liability company that serves as general partner of Heritage Hills and a

guarantor of the Loan. The purpose of the meeting was to discuss a potential increase in Plaintiff's credit facility with the Bank.

40. At no time during that meeting did Rodrigues or anyone at the Bank disclose that the Bank considered the Loan to be in default, that the Bank believed default-rate interest was accruing, or that the Bank would ever claim retroactive default interest.

41. To the contrary, the Bank, through its most senior officer, treated the relationship as that of a valued, performing borrower whose business the Bank wished to expand — conduct flatly irreconcilable with the position the Bank first asserted six months later.

**G. The Refinancing and the May 21, 2026 Payoff Ambush**

42. In the spring of 2026, Heritage Hills arranged to refinance the Loan with Ocean First Bank N.A. (the "Replacement Lender") on terms materially more favorable than the Loan's adjusted rate.

43. In connection with the refinancing, Plaintiff requested a payoff statement from the Bank.

44. On May 21, 2026, the Bank issued a payoff statement (the "Payoff Statement," attached as Exhibit F) demanding $9,514,500.89 against an unpaid principal balance of approximately $7.9 million. The Payoff Statement disclosed —

for the first time — a demand for $1,378,974.68 in purported “default interest,” together with $394,890.44 in prepayment charges.

45. The Payoff Statement’s default-interest demand was fraudulent. Under Section 7(a) of the Loan Agreement, no Event of Default existed at any time before May 2026, because the Bank never exercised its “sole option” to declare one; accordingly, no default-rate interest had accrued under Section 7(d), and no such amount was or ever had been “due.”

46. The Bank issued the Payoff Statement knowing that it would be relied upon not only by Heritage Hills but by the Replacement Lender and the settlement and title professionals responsible for closing the refinancing, all of whom require an accurate payoff figure to close and to insure title.

**H. The Rodrigues Admission**

47. By email dated May 26, 2026, Mr. DeRose disputed the default-interest charge.

48. On May 29, 2026, Rodrigues responded in writing on behalf of the Bank (the “Rodrigues Email,” attached with related correspondence as Exhibit G). The Rodrigues Email asserted that “several Events of Default have occurred” over the term of the Loan and then conceded the dispositive fact: “However, the Bank opted at this time to exercise the Event of Default specifically pursuant to section 2(i) & Section 7(vi) of the Loan Agreement.”

49. The Rodrigues Email thus admits that the Bank's attempt to exercise its option — the sole act that can create an Event of Default under Section 7(a) — occurred "at this time," i.e., in May 2026, more than three years after the Barley bankruptcy filing from which the Bank now purports to calculate retroactive default interest.

50. The Rodrigues Email further asserted that the boilerplate legend on the billing statements and the no-waiver provisions of the Loan Documents preserved the Bank's claimed right to collect default interest "at maturity or at paid off."

51. The Bank's multi-year course of conduct — billing and accepting contract-rate payments, issuing statements reflecting a current loan, and soliciting expanded business — estopped it from treating the January 2023 Barley filing as an Event of Default or claiming default-rate interest with respect to it, and estops the Bank from asserting otherwise.

## I. The Demand, the Bank's Silence, and the Lost Closing

52. On June 9, 2026, Heritage Hills, through counsel, transmitted a written demand to Rodrigues by electronic mail (the "Demand Letter," attached as Exhibit H), demanding that the Bank withdraw the default-interest charge, issue a corrected payoff statement, and confirm its position by the close of business on June 10, 2026, expressly advising the Bank that the refinancing was scheduled to close on June 12, 2026.

53. The Bank did not respond. It did not withdraw the charge, did not correct the Payoff Statement, did not offer to escrow the disputed amount, and did not communicate at all.

54. As a direct result of the Bank's inflated Payoff Statement and its refusal to correct it, the June 12, 2026 closing did not occur, and Heritage Hills lost the refinancing, leaving it unable to complete many necessary capital improvements and causing substantial damages which grow each day.

**J. The Bank's Financial Condition and Motive**

55. Upon information and belief, and based upon analysis of the Bank's December 31, 2025 FDIC call report, the Bank's demand for unjustified retroactive default interest on a fully performing loan is motivated by the Bank's severely weakened financial condition, as the loss of a large, fully performing commercial real estate loan to a competing lender would materially worsen the Bank's financial condition.

56. The Bank's manufactured default-interest demand serves that institutional interest: it deters the Plaintiff's refinancing, holds a performing asset in the Bank's portfolio, and is designed to extract a seven-figure windfall.

57. Upon information and belief, the Bank has deployed extracontractual payoff-stage leverage against other commercial borrowers as well, including by refusing to issue a payoff statement to another borrower except on terms requiring satisfaction of a different obligor's loan.

**K. Harm to Heritage Hills**

58. As a direct and proximate result of Defendants' conduct, Heritage Hills has suffered and continues to suffer damages including, without limitation: the loss of the June 12, 2026 refinancing and its more favorable economics; the resulting inability to make necessary capital improvements to the Property and decreased income associated therewith; the transaction costs of the failed closing; and the continued encumbrance of the Mortgaged Property beyond the amount lawfully secured, impairing Heritage Hills' ability to finance and operate the Property.

## COUNT I — DECLARATORY JUDGMENT (28 U.S.C. §§ 2201–2202) (Against Crown Bank)

59. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

60. An actual, substantial, and justiciable controversy exists between Heritage Hills and the Bank concerning whether any Event of Default has occurred under the Loan Documents; whether any default-rate interest has accrued or is owing for any period; and the correct amount required to pay the Loan in full.

61. Heritage Hills contends, and the contract's plain language and the Bank's own admission establish, that: (a) under Section 7(a), no Event of Default existed at any time prior to the Bank's May 2026 election; (b) no Default Rate interest accrued under Section 7(d) for any period prior to that election; (c) the Bank's purported 2026 election is itself invalid and of no effect because it was made in bad faith, in violation of the contract's explicit terms as well as the implied covenant of good faith and fair dealing, and with respect to a stale occurrence as to which the Bank's rights were waived and as to which the Bank is estopped; (d) the lawful payoff amount consists of unpaid principal, accrued interest at the contract rate, and such other charges as are lawfully due under the Loan Documents, and does not include any default-rate interest or prepayment penalty (which was forfeited by the Bank's breach of contract and other unlawful conduct).

62. A declaration will resolve the controversy, fix the lawful payoff amount, and permit Heritage Hills to refinance, albeit at terms less favorable than the terms agreed to by the Replacement Lender.

63. Heritage Hills respectfully requests a declaratory judgment that: (i) no Event of Default occurred or existed under the Loan Documents at any time; (ii) no default-rate interest accrued or is owing for any period; (iii) the Bank's May 2026 purported election of an Event of Default is invalid, ineffective, waived, and/or barred by estoppel; (iv) the Payoff Statement is incorrect and the lawful payoff

amount excludes the $1,378,974.68 default-interest charge and the prepayment penalty; and (v) upon payment of the lawful payoff amount, the Bank must satisfy the Mortgage of record, terminate all UCC financing statements, and release all collateral.

**COUNT II — BREACH OF CONTRACT**
**(Against Crown Bank)**

64. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

65. The Loan Documents are valid, enforceable contracts between Heritage Hills and the Bank.

66. The Bank breached the Loan Documents by, among other things: (a) demanding, as a condition of payoff and lien release, $1,378,974.68 in default-rate interest that never accrued under Sections 7(a) and 7(d); (b) issuing a false and inflated Payoff Statement; (c) refusing to accept prepayment of the lawful payoff amount and to release its liens in accordance with the Loan Documents; and (d) exercising its discretionary rights under Section 7 dishonestly and in bad faith, in violation of the implied covenant of good faith and fair dealing.

67. The Bank's multi-year course of conduct — billing and accepting contract-rate payments, issuing statements reflecting a current loan, and soliciting expanded business — estopped it from treating the January 2023 Barley bankruptcy

filing as an Event of Default or claiming default-rate interest with respect to it, and equitably estops the Bank from asserting otherwise.

68. Heritage Hills reasonably and detrimentally relied on the Bank's conduct: had the Bank disclosed its position in 2023, Heritage Hills would have refinanced the Loan promptly at then-prevailing rates.

69. As a direct and proximate result of the Bank's breaches, Heritage Hills has suffered damages including the lost refinancing, increased interest expense, transaction costs, and consequential damages in an amount to be proven at trial, together with pre- and post-judgment interest.

**COUNT III — TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS**
**(Against Crown Bank and Jacinto Rodrigues)**

70. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

71. As of May 2026, Heritage Hills had a prospective contractual relationship with the Replacement Lender: a refinancing of the Loan on committed terms, scheduled to close first on May 27 and then on June 12, 2026.

72. The refinancing would have closed but for Defendants' wrongful conduct.

73. Defendants knew of the prospective refinancing: the Payoff Statement was requested and issued for the express purpose of the refinancing, and the Demand Letter advised Defendants in writing of the June 12, 2026 closing date. Acting with the purpose and intent of preventing the refinancing, Defendants issued and refused to correct a payoff demand inflated by $1,378,974.68 in charges they knew had never accrued — an amount calculated to make the closing impossible — and then ignored a time-sensitive written demand to correct it.

74. The Bank's institutional motive — retaining a performing asset to mask portfolio deterioration — and Rodrigues' personal authorship of the Bank's position establish that the interference was intentional and improper.

75. As a direct and proximate result, the June 12, 2026 closing was lost and Heritage Hills suffered damages including the lost benefit of the refinancing, increased and continuing financing costs, and the transaction costs of the failed closing.

76. Defendants' conduct was outrageous, willful, and undertaken in conscious disregard of Plaintiff's rights, warranting punitive damages.

**COUNT IV — FRAUD (CONCEALMENT AND MISREPRESENTATION)**
**(Against Crown Bank and Jacinto Rodrigues)**

77. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

78. On May 21, 2026, the Bank, at Rodrigues' direction and with his participation, issued the Payoff Statement representing as fact that $1,378,974.68 in default interest had accrued and was due on the Loan.

79. That representation was false and was made with knowledge of its falsity or reckless disregard for its truth.

80. From no later than December 2023 through May 2026, Defendants concealed that the Bank privately claimed default-rate interest was accruing, while making continuing partial representations that conveyed the opposite: monthly billing statements showing only contract-rate interest and a current loan; billing and acceptance of ordinary payments; and Rodrigues' November 2025 solicitation of an expanded facility without any mention of the claimed accrual.

81. Defendants intended that Plaintiff rely on the misrepresentations and concealment by continuing to service the Loan, forgoing refinancing during a period of favorable rates, and proceeding with the 2026 refinancing in reliance on an accurate payoff process; and intended that the Replacement Lender and closing professionals rely on the Payoff Statement in structuring and funding the closing.

82. Plaintiff justifiably relied: it continued performing, refrained from refinancing earlier, and scheduled a closing that the false Payoff Statement then destroyed. Had Defendants disclosed the Bank's position at any time in 2023, 2024, or 2025, Plaintiff would have refinanced promptly.

83. Rodrigues personally participated in the fraud — including by concealing the Bank's position at the November 2025 meeting, directing or ratifying the false Payoff Statement, and authoring the May 29, 2026 written justification — and is individually liable for the conduct in which he participated.

84. As a direct and proximate result, Plaintiff suffered damages including the lost refinancing, increased financing costs, transaction costs, and consequential damages in an amount to be proven at trial.

85. Defendants' conduct — a multi-year, deliberate concealment by a bank and its chief executive, deployed to fraudulently extract a seven-figure penalty from a performing borrower — was outrageous and undertaken with reckless indifference to the Plaintiff's rights, warranting punitive damages.

**COUNT V — NEGLIGENT MISREPRESENTATION (IN THE ALTERNATIVE) (Against Crown Bank and Jacinto Rodrigues)**

86. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

87. In the alternative, and only to the extent Defendants' misstatements were not knowing or reckless: Defendants, in the course of their business and in transactions in which they had a pecuniary interest, supplied false information — including the Payoff Statement and the monthly billing statements — for the guidance of Plaintiff and of third parties (the Replacement Lender and closing

professionals) in business transactions, without exercising reasonable care or competence in obtaining or communicating that information.

88. A payoff statement exists for one purpose: to be relied upon in paying off a loan. Defendants knew recipients would rely on its accuracy. Plaintiff justifiably relied, and the reliance proximately caused the loss of the June 12, 2026 refinancing and the other damages alleged herein, in an amount to be proven at trial.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants for:

(i) A declaratory judgment as set forth above, including a declaration that no Event of Default occurred, that no default-rate interest accrued or is owing, that the Bank's purported 2026 election is invalid, waived, and barred by estoppel, that no prepayment penalty is owed, and fixing the lawful payoff amount;

(ii) Compensatory damages against the Bank and Rodrigues, jointly and severally in an amount to be proven at trial, together with punitive damages;

(iii) Pre-judgment and post-judgment interest; and

(iv) Such other and further relief as the Court deems just and proper.

Dated: September 21, 2026

/s/ Daniel T. Brier

Daniel T. Brier (PA ID 53248)
Brian J. Levy (PA ID 327184)
Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
(570) 342-6100
dbrier@mbklaw.com
blevy@mbklaw.com

-and-

Steven M. Coren (PA ID 32140)
Andrew Belli (PA ID 208100)
(*pro hac vice applications forthcoming*)
Coren & Ress, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
(215) 735-8700
scoren@kcr-law.com
abelli@kcr-law.com

*Counsel for Plaintiff*