# Exhibit D1

# AMENDED AND RESTATED PROMISSORY NOTE

$8,962,367.33 November ___, 2020

FOR VALUE RECEIVED, **HERITAGE HILLS ASSOCIATES**, a Pennsylvania limited partnership, with a mailing address of 2700 Mt. Rose Avenue, York, Pennsylvania 17402 ("**Heritage**"), **HERITAGE HILLS BUSINESSES LIMITED PARTNERSHIP**, a Pennsylvania limited partnership, with a mailing address of 2700 Mt. Rose Avenue, York, Pennsylvania 17402 ("**Heritage LP**") and **HERITAGE HILLS BUSINESSES I LLC**, a Pennsylvania limited liability company, having an address at 2700 Mt. Rose Avenue, York, Pennsylvania 17402 ("**Heritage LLC**" and together with Heritage and Heritage LP, collectively, jointly and severally the "**Borrower**") promises to pay to the order of,

**CROWN BANK**, having its principal address at 27 Prince Street, Elizabeth, New Jersey 07208 (the "**Bank**"), at such office or at such other place as the Bank may designate from time to time in writing, the principal sum of Eight Million Nine Hundred Sixty Two Thousand Three Hundred Sixty Seven and 33/100 ($8,962,367.33) Dollars (the "**Principal Sum**") lawful money of the United States of America, together with interest thereon as hereinafter provided. This Promissory Note ("**Note**") evidences a loan being made on the date hereof by the Bank to the Borrower in the Principal Sum of $8,962,367.33 ("**Loan**") pursuant to the terms of a Loan Agreement dated November 21, 2014, as modified by the Modification Agreement (hereinafter defined) of even date herewith ("**Loan Agreement**") executed by the Borrower and the Bank.

## Background

WHEREAS, Heritage originally borrowed $10,000,000.00 (the "**Original Loan**") from Bank pursuant to a certain Promissory Note dated November 21, 2014 (the "**Original Note**"), and

WHEREAS, pursuant to the terms of a certain Modification and Joinder Agreement of even date herewith (the "**Modification Agreement**"), the Borrower and the Bank have agreed to, inter alia, join Heritage LP and Heritage LLC as Borrower parties under the Loan Documents and to execute this Amended and Restated Promissory Note (the "**Note**") to amend and restate the terms of the Original Note.

Capitalized terms used in this Note shall have the meaning and be construed as provided for in the Loan Agreement unless a different meaning is set forth in this Note or clearly appears from the context of this Note. This Note, the Loan Agreement, the Modification Agreement and any other document executed and delivered in connection with the Loan and the modification thereof, as the same may be from time to time amended, restated, and extended, are sometimes individually referred to herein as a "Loan Document" and collectively as the "Loan Documents."

## 1. Interest Rate.

(a) Commencing the date of this Note and continuing through December 1, 2025, the principal sum outstanding from time to time hereunder shall bear interest at a fixed annual rate of five and one-half of one percent (5.50%) (the "**Initial Interest Rate**"). Commencing on December 2, 2025 (the "**Interest Rate Change Date**"), the Initial Interest Rate will be adjusted by adding two hundred fifty (250) basis points to the NYFHLB Index (as hereinafter defined) (the "**Adjusted Interest Rate**"). The "NYFHLB Index" shall be the Federal Home Loan Bank New York's Five Year bullet index and is defined as the weekly average NYFHLB Index as published by the Federal Home Loan Bank of New

York at https://fhlbankny.custhelp.com/cgi-bin/fhlbankny.cfg/php/ma/fattach_get.php?1=AvMK~wqtDv8S~xb~Gv8S~yIlr~8qp6f7OANuhD7~Pvn&2=4327. If the NYFHLB Index is no longer available, the Bank will select a new index which is based on comparable information and provide the Borrower with notice of this change. In no event will the Adjusted Interest Rate be less than five and one-half of one percent (5.50%) per annum (the "**Minimum Rate**").

(b) The annual Interest Rate shall be computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

(c) The foregoing provisions of this Note relating to interest shall at all times be subject to the provisions of Paragraph 10 ("**Default Rate**"), below.

(d) Notwithstanding anything to the contrary contained herein or in any other Loan Document, the effective rate of interest hereunder shall not exceed the maximum effective rate of interest permitted by applicable law or regulation. The Bank hereby agrees not to collect knowingly any interest from the Borrower in the form of fees or otherwise that will render the Loan usurious. In the event that such interest would be usurious in the Bank's opinion, then the Bank reserves the right to reduce the interest payable by the Borrower. This provision shall survive the repayment of this Note.

2. **Payments.**

(a) On the date hereof, the Borrower shall prepay interest on the principal amount of the Loan payable through December 1, 2020, and shall escrow with the Bank amounts sufficient to pay real estate taxes assessed against the Mortgaged Property (as hereinafter defined) (the "**Real Estate Taxes**") when due.

(b) Commencing on the second (2nd) day of January, 2021 and continuing on the second (2nd) day of each calendar month thereafter until the Interest Rate Change Date, the Borrower shall make installments of principal and interest of $$55,446.38, which sum has been calculated based upon the principal amount of the Loan and a twenty-five (25) year amortization schedule with an interest rate of 5.50% per annum, together with one-twelfth (1/12) of the annual Real Estate Taxes.

Commencing on the second (2nd) day of January, 2026 and continuing on the second (2nd) day of each calendar month thereafter until the Maturity Date, the Borrower shall make installments of principal and interest calculated based on the then outstanding principal balance of the Loan, the Adjusted I Interest Rate, and the remainder of the twenty-five (25) year amortization schedule, together with one-twelfth (1/12) of the annual Real Estate Taxes. On the Maturity Date, one (1) final payment of all outstanding principal, interest, fees and other charges shall be due and payable to the Bank.

(c) The unpaid principal balance then outstanding together will all accrued and unpaid interest and charges, if any, shall become due and payable on December 2, 2030 (the "**Maturity Date**").

(d) Any payment hereunder received by Bank, other than a partial prepayment of principal and interest due hereunder, shall be applied first to payment of all accrued but unpaid interest on the

outstanding Principal balance hereof, then to reduction of the Principal amount hereof and then to satisfaction of all costs of collection.

3. **Prepayments**. The Borrower may prepay the Loan in part or in full prior to the Maturity Date provided that the Borrower:

(a) shall provide the Bank with written notice of (i) the Borrower's intention to prepay the Loan in full by requesting a payoff letter or (ii) the Borrower's making of a partial prepayment and the amount thereof, and

(b) shall pay a prepayment fee to the Bank simultaneously with the prepayment calculated on the amount prepaid and in accordance with the following schedule:

| Loan Year(s)* | Prepayment Fee |
|---|---|
| 1 and 6 | 5% (five percent) of the amount prepaid. |
| 2 and 7 | 4% (four percent) of the amount prepaid. |
| 3 and 8 | 3% (three percent) of the amount prepaid. |
| 4 and 9 | 2% (two percent) of the amount prepaid. |
| 5 and 10 | 1% (one percent) of the amount prepaid. |

*Measured from the date of the Note to the first anniversary of the initial payment and every anniversary thereafter.

A prepayment fee will not be assessed to the Borrower as to an amount prepaid with insurance proceeds or a condemnation award applicable to any Collateral.

Any prepayment of principal resulting from an acceleration of the Loan following the occurrence of an Event of Default will incur a prepayment fee.

4. **Security**. This Note, and the due performance by the Borrower of all of its obligations hereunder, is secured as set forth in the Loan Agreement, to which reference is hereby made including, but not limited, to a continued first and paramount mortgage lien in favor of the Bank on the certain real property designated as UPI 46-000-IJ-0019, 46-000-IJ-0020, 46-000-IJ-0021F and 54-000-IJ-0022, all on the tax map of the Townships of York and Springettsbury and located at 2690 and 2700 Mt. Rose Avenue, Townships of York and Springettsbury, County of York and Commonwealth of Pennsylvania (the "**Mortgaged Property**").

5. **Late Charge**. In the event that any monthly payment of principal, applicable real estate tax or insurance escrow, or interest which is due to the Bank, but is not received by the Bank when due, and remains unpaid for ten (10) days after the due date including, without limitation, the Maturity Date or any extension thereof, in addition to and not in limitation of any other rights or remedies which the Bank may have with respect thereto under any of the Loan Documents or with respect to any Collateral, the Borrower shall pay the Bank on demand a "late charge" computed at the rate of five percent (5%) of the amount not paid to cover the extra expense and inconvenience to the Bank in ensuring payment of such delinquent amount. As to a loan with a balloon payment on the Maturity Date, the five (5%) percent late penalty shall not apply to the balloon portion of the payment; but simply to the portion representing the regularly scheduled monthly payment. The Borrower

acknowledges that its failure to pay any amount due hereunder within such ten (10) day period will result in the Bank incurring additional expense in servicing the Loan, the loss of the use of the money due, and frustration to the Bank in meeting its loan commitments, that the damages to the Bank in connection with such late payment are extremely difficult and impractical to ascertain, and that five percent (5%) of the amount not paid within such ten (10) day period is a reasonable estimate of the damages incurred by the Bank in connection with any such late payment. The amount of any such "late charge" not paid promptly following demand therefore shall be deemed outstanding principal and payable pursuant to this Note and secured by the Collateral.

6. **Events of Default.** In addition to any other event referred to herein, the occurrence of which, by the terms hereof, constitutes an Event of Default hereunder, the occurrence of any one or more of the following events shall, at the Bank's option, constitute an Event of Default hereunder:

(a) The Borrower shall fail to make (and the Bank does not receive) any payment due to the Bank under this Note or under any of the other Loan Documents within ten (10) days after the same is due and payable, whether at maturity or by acceleration or otherwise;

(b) Except as otherwise provided for in this Note, the Borrower shall fail to observe or perform any of the covenants or agreements on its part to be observed or performed under this Note or under any of the other Loan Documents within thirty (30) days after written notice from the Bank of such non-compliance, provided however that if such non-compliance cannot be cured within such thirty (30) day period, and the Borrower is not otherwise in default under the terms of this Note and the Loan Documents, Borrower shall be afforded up to an additional thirty (30) days to cure such default so long as such time to cure does not require an extension of the Maturity Date and provided the Borrower shall have commenced such cure within such initial thirty (30) day period and shall thereafter diligently continue to cure such default;

(c) Any representation or warranty of the Borrower under this Note or under any of the other Loan Documents shall be untrue in any material respect when made; or

(d) Any Event of Default shall occur under the provisions of any of the other Loan Documents.

7. **Remedies.** Upon the occurrence of any Event of Default, then the entire unpaid Principal Sum hereunder plus all interest accrued thereon plus all other sums due and payable to the Bank under the Loan Documents shall, at the option of the Bank, become due and payable immediately without presentment, demand, notice of nonpayment, protest, notice of protest or other notice of dishonor, all of which are hereby expressly waived by the Borrower.

In addition to the foregoing, upon the occurrence of any Event of Default the Bank may forthwith exercise singly, concurrently, successively, or otherwise any and all rights and remedies available to the Bank under any of the Loan Documents or with respect to any Collateral, or available to the Bank by law, equity, statute or otherwise including, without limitation, the right to set off any sums deposited by the Borrower with the Bank against the amounts due hereunder.

8. **JURY TRIAL WAIVER. THE BORROWER AND THE BANK HEREBY WAIVE ANY AND ALL RIGHTS THAT THEY MAY HAVE NOW OR HEREAFTER HAVE UNDER THE LAWS OF THE UNITED STATES OF AMERICA OR ANY STATE TO A TRIAL BY JURY OF ANY AND ALL ISSUES ARISING EITHER DIRECTLY OR INDIRECTLY IN ANY ACTION OR PROCEEDING BETWEEN THE BORROWER AND THE BANK OR THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, OUT OF, OR IN ANY WAY CONNECTED WITH THE NOTE. IT IS INTENDED THAT THIS WAIVER OF JURY TRIAL SHALL APPLY TO ANY AND ALL CLAIMS, DEFENSES,**

**RIGHTS, AND/OR COUNTERCLAIMS IN ANY ACTION OR PROCEEDING.**

9. **Remedies Cumulative, Etc.**

(a) No right or remedy conferred upon or reserved to the Bank under any of the Loan Documents, or with respect to any Collateral, or now or hereafter existing at law or in equity, by statute, or other legislative enactment, is intended to be exclusive of any other right or remedy, and each and every such right or remedy shall be cumulative and concurrent, and shall be in addition to every other such right or remedy, and may be pursued singly, concurrently, successively or otherwise, at the sole discretion of the Bank, and shall not be exhausted by any one exercise thereof but may be exercised as often as occasion therefor shall occur. No act of the Bank shall be deemed or construed as an election to proceed under any one such right or remedy to the exclusion of any other such right or remedy; furthermore, each such right or remedy of the Bank shall be separate, distinct, and cumulative and none shall be given effect to the exclusion of any other. The failure to exercise or delay in exercising any such right or remedy, or the failure to insist upon strict performance of any term of any of the Loan Documents, shall not be construed as a waiver or release of the same, or of any Event of Default thereunder, or of any obligation or liability of the Borrower thereunder.

(b) The recovery of any judgment by the Bank and/or the levy of execution under any judgment upon any Collateral shall not affect in any manner or to any extent the lien of any security interest in such Collateral, or any rights, remedies, or powers of the Bank under any of the Loan Documents or with respect to any Collateral, but such liens and such security interest, and such rights, remedies and power of the Bank shall continue unimpaired as before. Further, the exercise by the Bank of its rights and remedies and the entry of any judgment by the Bank shall not affect in any way the interest rate payable hereunder or under any of the other Loan Documents on any amounts due to the Bank but interest shall continue to accrue on such amounts at the Default Rate, provided for in Paragraph 10, below.

(c) Except as to notices that are specifically provided for herein or in any of the other Loan Documents, the Borrower hereby waives presentment, demand, notice of nonpayment, protest, notice of protest or other notice of dishonor, and any and all other notices in connection with any default in the payment of, or any enforcement of the payment of, all amounts due under the Loan Documents. To the extent permitted by law, the Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect.

(d) The Borrower agrees that the Bank may release, compromise, forbear with respect to, waive, suspend, extend or renew any of the terms of the Loan Documents (and the Borrower hereby waives any notice of any of the foregoing), and that the Loan Documents may be amended, supplemented or modified by the Bank and other signatory parties and that the Bank may resort to any Collateral in such order and manner as it may think fit, or accept the assignment, substitution, exchange, pledge, or release of all or any portion of any Collateral, for such consideration, or none, as it may require, without in any way affecting the validity of any liens over or other security interest in the remainder of any such Collateral (or the priority thereof or the position of any subordinate holder of any lien or other security interest with respect thereto); and any action taken by the Bank pursuant to the foregoing shall in no way be construed as a waiver or release of any right or remedy of the Bank, or of any Event of Default, or of any liability or obligation of the Borrower, under any of the Loan Documents.

(e) The Borrower agrees that any action or proceeding against it to enforce this Note may be commenced in any federal or state court in the Commonwealth of Pennsylvania and the Borrower

hereby waives any objections which the Borrower may have now or hereafter have based on venue and/or *forum non-conveniens* of any such suit, action, or proceeding, and the Borrower hereby irrevocably submits to the jurisdiction of any such court in any suit, action, or proceeding.

10. **Default Rate.** Upon an Event of Default or after the Maturity Date, whether or not the Bank has elected to accelerate the indebtedness evidenced by this Note, the Loan shall bear interest, payable on demand, at a rate, per annum, determined on a daily basis, calculated at the rate above set forth plus five percentage points (500 basis points) per annum (the "**Default Rate**"), but in no event more than the highest rate permitted by the applicable usury law in respect of the Borrower, until the unpaid balance of the Principal Sum, interest and any charges shall have been paid in full. Borrower acknowledges that:

(i) the Default Rate is a material inducement to the Bank to make the Loan;
(ii) the Bank would not have made the Loan in the absence of the agreement of Borrower to pay the Default Rate;
(iii) the Default Rate represents compensation for increased risk to the Bank that the Loan will not be repaid; and
(iv) the Default Rate is not a penalty and represents a reasonable estimate of (a) the cost to the Bank in allocating its resources (both personnel and financial) to the ongoing review, monitoring, administration and collection of the Loan, and (b) compensation to the Bank for losses that are difficult to ascertain.

11. **Costs and Expenses.** Following the occurrence of any Event of Default, the Borrower shall pay to the Bank, upon demand, all reasonable costs and expenses (including all reasonable amounts paid to attorneys, accountants, real estate brokers, and other advisors employed by the Bank), incurred by the Bank in the exercise of any of its rights, remedies, or powers under any of the Loan Documents as a secured or unsecured creditor, as the case may be, of the Borrower, any general partner of the Borrower, or any Guarantor, or with respect to the Collateral with respect to such Event of Default, and any amount thereof not paid promptly following demand thereof shall be added to the principal sum hereunder and shall bear interest at the Default Rate from the date of such demand until paid in full, and shall be secured by the Collateral. In connection with and as part of the foregoing, in the event that any of the Loan Documents is placed in the hands of an attorney for the collection of any sum payable thereunder, the Borrower agrees to pay reasonable attorneys' fees for the collection of the amount being claimed under the Loan Document, as well as all costs, disbursements and allowances provided by law, the payment of which sums shall be secured by the Collateral. Nothing in this Paragraph 11 shall limit the obligation of the Borrower to pay any and all costs and expenses for which the Borrower is otherwise liable under any of the Loan Documents.

12. **Severability.** In the event that for any reason one or more of the provisions of this Note or their application to any person or circumstance shall be held to be invalid, illegal or unenforceable in any respect or to any extent, such provisions shall nevertheless remain valid, legal and enforceable in all such other respects and to such extent as may be permissible. In addition, any such invalidity, illegality or unenforceability shall not affect any other provisions of this Note, but this Note shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

13. **Successors and Assigns.** This Note inures to the benefit of the Bank and binds the Borrower, and the parties' respective successors and assigns, and the words "the Bank" and "the Borrower" whenever occurring herein shall be deemed and construed to include such respective successors and assigns.

14. **Notices.** All notices required to be given to any of the parties hereunder shall be in writing and shall be deemed to have been sufficiently given for all purposes when presented personally to such party or sent by certified or registered mail, return receipt requested, to such party at its address set forth below:

| | |
|---|---|
| The Borrower: | Heritage Hills Associates<br>2700 Mt. Rose Avenue<br>York, Pennsylvania 17402<br>Attn: Matthew J. DeRose |
| | Heritage Hills Businesses Limited Partnership<br>2700 Mt. Rose Avenue<br>York, Pennsylvania 17402<br>Attn: Timothy Barley |
| | Heritage Hills Businesses I LLC<br>2700 Mt. Rose Avenue<br>York, Pennsylvania 17402<br>Attn: Timothy Barley |
| with a copy to the Borrower's counsel: | ____________________<br>____________________<br>____________________<br>Attn.: ________________ |
| The Bank: | Crown Bank<br>Commercial Real Estate<br>27 Prince Street<br>Elizabeth, New Jersey 07208 |
| with a copy to the Bank's counsel: | Hill Wallack LLP<br>202 Carnegie Center<br>Princeton, New Jersey 08543<br>Attention: Nicole Perdoni-Byrne, Esq. |

Such notice shall be deemed to be given when received if delivered personally, or two (2) days after the date mailed if sent by certified or registered mail, return receipt requested. Any notice of any change in such address shall also be given in the manner set forth above. Whenever the giving of notice is required, the giving of such notice may be waived in writing by the party entitled to receive such notice.

15. **Definitions; Number and Gender.** In the event the Borrower consists of more than one individual or entity, the obligations and liabilities hereunder of each of them shall be joint and several and the word "the Borrower" shall mean all or some or any of them. For purposes of this Note, the singular shall be deemed to include the plural and the neuter shall be deemed to include the masculine and feminine, as the context may require. The references herein to the Loan Documents or any one of them shall include any supplements to or any amendments of or restatements of such Loan Documents or any one of them.

16. **Incorporation by Reference.** All of the terms and provisions of the Loan Documents, to the extent not inconsistent herewith, are hereby incorporated herein by reference.

17. **Captions.** The captions or headings of the paragraphs in the Note are for convenience only and shall not control or affect the meaning or construction of any of the terms or provisions of this Note.

18. **Use of Proceeds.** The proceeds of the Note are to be used for business, commercial, investment or other similar purposes and no portion thereof will be used for any personal, family, or household use.

19. **Governing Law.** This Note shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania without giving effect to principles applicable to conflicts of laws.

20. **CONFESSION OF JUDGMENT: BORROWER HEREBY AUTHORIZES AND EMPOWER ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE STATE OF NEW JERSEY, OR IN ANY OTHER JURISDICTION THAT PERMITS THE ENTRY OF JUDGMENT BY CONFESSION, TO APPEAR FOR BORROWER AT ANY TIME AFTER THE OCCURRENCE OF ANY EVENT OF DEFAULT UNDER THIS NOTE, THE MORTGAGE, OR THE LOAN AGREEMENT OR AT ANY TIME AFTER THE MATURITY DATE HEREUNDER IN ANY ACTION BROUGHT AGAINST BORROWER HEREUNDER BY BANK, WITH OR WITHOUT COMPLAINT OR DECLARATION FILED, WITHOUT STAY OF EXECUTION, AS OF ANY TERM OR TIME, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR ALL, OR ANY PART OF, THE UNPAID PRINCIPAL BALANCE HEREUNDER AND ACCRUED INTEREST THEREON, TOGETHER WITH ALL COSTS AND OTHER EXPENSES INCURRED IN CONNECTION THEREWITH AND AN ATTORNEYS' COLLECTION COMMISSION OF FIVE (5%) PERCENT OF THE AGGREGATE AMOUNT OF THE FOREGOING SUMS, BUT IN NO EVENT LESS THAN FIVE THOUSAND ($5,000) DOLLARS; AND FOR SUCH PURPOSE THE ORIGINAL OR ANY PHOTOCOPY OF THIS NOTE AND AN AFFIDAVIT OF BANK OR BANK'S COUNSEL AVERRING TO THE EVENT OF DEFAULT SHALL BE A GOOD AND SUFFICIENT WARRANT OF ATTORNEY. SUCH AUTHORIZATION SHALL NOT BE EXHAUSTED BY ONE EXERCISE THEREOF, BUT JUDGMENT MAY BE CONFESSED AS AFORESAID FROM TIME TO TIME. BORROWER HEREBY WAIVES ALL ERRORS AND RIGHTS OF APPEAL, AS WELL AS RIGHTS TO STAY OF EXECUTION AND EXEMPTION OF PROPERTY, IN ANY ACTION TO ENFORCE ITS LIABILITY HEREON.**

**THE AUTHORITY GRANTED HEREIN TO CONFESS JUDGMENT SHALL NOT BE EXHAUSTED BY ANY EXERCISE THEREOF, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL THE AMOUNTS DUE HEREUNDER. BORROWER ACKNOWLEDGES THAT THEY HAVE BEEN REPRESENTED BY COUNSEL IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS INSTRUMENT (OR HAS MADE THE UNILATERAL DECISION NOT TO CONSULT WITH COUNSEL IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS INSTRUMENT) AND THAT IT KNOWINGLY WAIVES ITS RIGHT TO BE HEARD PRIOR TO THE ENTRY OF SUCH JUDGMENT AND UNDERSTANDS THAT, UPON SUCH ENTRY, SUCH JUDGMENT SHALL BECOME A LIEN ON ALL REAL PROPERTY OF BORROWER IN THE COUNTY WHERE SUCH JUDGMENT IS ENTERED.**

**PRIOR TO SIGNING THIS INSTRUMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS INSTRUMENT. BORROWER AGREES TO THE TERMS OF THIS**

**INSTRUMENT AND ACKNOWLEDGES RECEIPT OF A TRUE AND COMPLETE COPY OF THIS INSTRUMENT.**

**Heritage Initials:** __________
**Heritage LP Initials:** TRB
**Heritage LLC Initials:** TRB

**21. Cross-Collateralize and Cross-Default.** All other agreements between Borrower and/or Guarantors and the Bank and/or any of its affiliates or subsidiaries are hereby amended so that a default under this Note is a default under all other agreements and a default under any one of those agreements is a default under this Note. All such agreements are further amended so that the collateral under this Note secures the obligations now or hereafter outstanding under all other agreements with the Bank and/or its affiliates or subsidiaries and the collateral which serves as security under any other agreement with the Bank and/or its affiliates or subsidiaries secures the obligations under this Note.

22. **REPLACEMENT NOTE.** This Note is executed and delivered to renew, amend, and restate the Original Note. This Note renews, replaces and supersedes the Original Note, and all amounts advanced under the Original Note shall be construed to have been advanced hereunder, and the Borrower shall repay such amounts, together with interest, in accordance with the terms of this Note. The Borrower warrants and represents to the Bank that nothing done pursuant to this Note shall affect the liability of the Borrower under or on account of any of the Loan Documents, as modified by the Modification Agreement, or impair, prejudice, hinder, or impede the ability of the Bank to exercise any rights or remedies it may have against the Borrower pursuant to any of the Loan Documents, as modified by the Modification. Except as expressly provided herein and in the Modification, the Note, the Loan Agreement, and all other Loan Documents executed and delivered to the Bank in connection with this Loan shall continue in full force and effect, without modification, in accordance with their respective terms. If the Borrower's obligations under this Note are at any time determined to be void or unenforceable on account of the amendment and restatement of the Original Note and/or any breach of the foregoing warranty, the Borrower, as an additional and independent obligation, hereby indemnifies and holds Bank harmless against and from any and all loss, cost, damage or expense (including reasonable attorney's fees, whether or not litigation has been commenced and in all trial, bankruptcy and appellate proceedings) suffered or incurred by Bank as a result of any such obligations being void or unenforceable.

[Remainder of this page intentionally left blank]

**IN WITNESS WHEREOF**, the Borrower, intending to be legally bound hereby, has executed the Note the day and year first above written.

Witness:

BORROWER:
**Heritage Hills Associates,**
**a Pennsylvania limited partnership**

__________________________

By: __________________________
Matthew J. DeRose, General Partner

Witness:

**Heritage Hills Businesses Limited Partnership,**
**a Pennsylvania limited partnership**

By its general partner,
BSM Holdings LLC

__________________________

By:__________________________
Timothy Barley, Manager

Witness:

**Heritage Hills Businesses I LLC,**
**a Pennsylvania limited liability company**

By its sole member,
Heritage Hills Businesses Limited Partnership

By its general partner,
BSM Holdings LLC

__________________________

By:__________________________
Timothy Barley, Manager

**IN WITNESS WHEREOF**, the Borrower, intending to be legally bound hereby, has executed the Note the day and year first above written.

Witness:

BORROWER:
**Heritage Hills Associates,**
**a Pennsylvania limited partnership**

______________________________

By: ______________________________
Matthew J. DeRose, General Partner

Witness:

**Heritage Hills Businesses Limited Partnership,**
**a Pennsylvania limited partnership**

By its general partner,
BSM Holdings LLC

______________________________

By: ______________________________
Timothy Barley, Manager

Witness:

**Heritage Hills Businesses I LLC,**
**a Pennsylvania limited liability company**

By its sole member,
Heritage Hills Businesses Limited Partnership

By its general partner,
BSM Holdings LLC

______________________________

By: ______________________________
Timothy Barley, Manager

## Acknowledgements

COMMONWEALTH OF PENNSYLVANIA :
COUNTY OF York :

On the 20th day of November, 2020, before me personally came Matthew J. DeRose, to me known to be the person who executed the foregoing instrument, and who, being by me duly sworn, did depose and say that he/she is the general partner of Heritage Hills Associates, a Pennsylvania limited partnership, and that he/she is duly authorized to act on behalf of said Limited Partnership, and being informed of the contents thereof, acknowledged execution of the foregoing instrument on behalf of said Limited Partnership.

Witness my hand and official seal, this 20th day of November, 2020.

Julia T. Arndt
Notary Public

COMMONWEALTH OF PENNSYLVANIA :
COUNTY OF ____________________ :

On the ____ day of November, 2020, before me personally came Timothy Barley, to me known to be the person who executed the foregoing instrument, and who, being by me duly sworn, did depose and say that he/she is the Manager of BSM Holdings LLC, the general partner of Heritage Hills Businesses Limited Partnership, a Pennsylvania limited partnership, and that he/she is duly authorized to act on behalf of said Limited Partnership, and being informed of the contents thereof, acknowledged execution of the foregoing instrument on behalf of said Limited Partnership.

Witness my hand and official seal, this _____ day of November, 2020.

______________________________________
Notary Public

**Acknowledgements**

COMMONWEALTH OF PENNSYLVANIA :
COUNTY OF ___________________ :

On the ____ day of November, 2020, before me personally came Matthew J. DeRose, to me known to be the person who executed the foregoing instrument, and who, being by me duly sworn, did depose and say that he/she is the general partner of Heritage Hills Associates, a Pennsylvania limited partnership, and that he/she is duly authorized to act on behalf of said Limited Partnership, and being informed of the contents thereof, acknowledged execution of the foregoing instrument on behalf of said Limited Partnership.

Witness my hand and official seal, this _____ day of November, 2020.

_______________________________
Notary Public

COMMONWEALTH OF PENNSYLVANIA :
COUNTY OF York :

On the 19th day of November, 2020, before me personally came Timothy Barley, to me known to be the person who executed the foregoing instrument, and who, being by me duly sworn, did depose and say that he/she is the Manager of BSM Holdings LLC, the general partner of Heritage Hills Businesses Limited Partnership, a Pennsylvania limited partnership, and that he/she is duly authorized to act on behalf of said Limited Partnership, and being informed of the contents thereof, acknowledged execution of the foregoing instrument on behalf of said Limited Partnership.

Witness my hand and official seal, this 19th day of November, 2020.

P. Michelle Fishel
Notary Public

Commonwealth of Pennsylvania - Notary Seal
P. Michelle Fishel, Notary Public
York County
My commission expires December 25, 2023
Commission number 1050408
Member, Pennsylvania Association of Notaries

COMMONWEALTH OF PENNSYLVANIA :
COUNTY OF York :

On the 19th day of November, 2020, before me personally came Timothy Barley, to me known to be the person who executed the foregoing instrument, and who, being by me duly sworn, did depose and say that he/she is the Manager of BSM Holdings LLC, the general partner of Heritage Hills Businesses Limited Partnership, the sole member of Heritage Hills Businesses I LLC, a Pennsylvania limited liability company; and that he/she executed the foregoing instrument in the name of said limited liability company, and that he/she had authority to sign the same, and acknowledged that he/she executed the same as the act and deed of said limited liability company.

Witness my hand and official seal, this 19th day of November, 2020.

P. Michelle Fishel
Notary Public

Commonwealth of Pennsylvania - Notary Seal
P. Michelle Fishel, Notary Public
York County
My commission expires December 25, 2023
Commission number 1050408
Member, Pennsylvania Association of Notaries