# Exhibit G

**From:** Jacinto Rodrigues <jacinto.rodrigues@crownbank.net>
**Date:** May 29, 2026 at 9:17:07 AM EDT
**To:** Matt DeRose <Matt.DeRose@heritagelancaster.com>
**Cc:** Larry Freirich <freirichlb@gmail.com>
**Subject: RE: Heritage Hills**

Heritage Hills Associates
c/o Matt DeRose
2700 Mount Rose Ave
York, PA 17402

RE: Email dated May 26, 2026

Dear Mr. DeRose,

We are in receipt of your email dated May 26, 2026, disputing the inclusion of default interest in the payoff statement issued by Crown Bank (the "Bank").

After review of the Loan Documents and the circumstances giving rise to the default, the Bank disagrees with your position.

Throughout the term of the loan, it is known to both the Bank and the Borrower/Obligors that several Events of Default have occurred. However, the Bank opted at this time to exercise the Event of Default specifically pursuant to section 2 (i) & Section 7(vi) of the Loan Agreement.

In response to your claim that the Bank did not honor the notice and cure rights provided in the Loan agreement/Note. The Bank objects as notice of the bankruptcy filing was provided through the bankruptcy proceeding

itself, of which Borrower and the guarantors had actual and constructive notice. Accordingly, the occurrence of the Event of Default was known to the obligors without the necessity of any additional notice from the Bank. In addition, the bankruptcy filing constituted a non-curable Event of Default. A bankruptcy petition, once filed, immediately triggers the contractual default provisions under the Loan Documents and cannot be "cured" within the meaning of the contractual cure provision referenced in your correspondence. The cure provision applies to defaults capable of remedy within the applicable cure period.

In your email, you reference that the loan statements make no mention of the default rate owed, however, if you refer to each loan statement on page 1 you will note a statement that reads as follows," Notice: If the below statement is in conflict with any terms of the loan note, the loan note will govern. If any default interest rate is due, the Bank does not waive its collection right by not collecting at this time and will collect said interest at maturity or at paid off."

In addition, pursuant to section 9 (a) of the Promissory Note, and section 7 (c) (i) of the Loan Agreement the Bank reserves it's rights to exercise or delay any right or remedy under the loan documents. Failure to exercise or delay in exercising any such right or remedy, or failure to insist upon strict performance of any term of any of the loan documents, shall not be constructed as a waiver or release of the same, or of any Event of Default thereunder, or of any obligation or liability of the Borrower thereunder.

As a result, the Bank properly applied the default rate in accordance with the terms of the Note and related Loan Documents, and the payoff amount previously provided remains accurate.

Nothing contained herein shall constitute a waiver of any rights or remedies available to the Bank, all of which are expressly reserved.

---

**From:** Matt DeRose <Matt.DeRose@heritagelancaster.com>
**Sent:** Tuesday, May 26, 2026 6:28 AM
**To:** Jacinto Rodrigues <Jacinto.Rodrigues@crownbank.net>
**Cc:** Larry Freirich <freirichlb@gmail.com>
**Subject:** Heritage Hills

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Jacinto,

I am in receipt of the payoff letter from Crown Bank and the respective default interest charge which now suddenly appears. To be honest, it was shocking given all the correspondence we have had with the Bank recently. While we are prepared to pay off the outstanding balance and prepayment penalty, we object to the default charge on the following grounds:

1. The Notice and Cure Rights Were Not Honored
The Loan Agreement (Section 7(a)(ii)) and the Note (Section 6(b)) both provide that for covenant or agreement failures, the Borrower gets 30 days written notice plus a potential additional 30-day cure period before the default is actionable. The bankruptcy filing provision (Section 7(a)(vi)) does not have an express notice-and-cure carve-out, but the Bank's complete silence constitutes a waiver of the default or an inequitable invocation of it, particularly when all loan payments were current throughout.

- Please see the latest statement we received with no mention of default interest nor did any statement in the past 3 years.
- The Bank sent us a rate letter in January that clarified and established our new rate.
- As far as Tim Barley's bankruptcy, he was the weakest of 5 guarantors and we easily could have replaced. This doesn't even account for the fact that we asked you to add him as a guarantor after the original loan existed not the contrary.

2. All Payments Were Made — No Monetary Default Occurred
The Default Rate is explicitly framed in the documents as compensation for "increased risk to the Bank that the Loan will not be repaid" and for the Bank's costs of "ongoing review, monitoring, administration and collection." We have remained current on every payment obligation throughout the loan. It's our position that imposing a default interest payment — years after the triggering event — is punitive rather than compensatory, and arguably unconscionable or contrary to the covenant of good faith and fair dealing under Pennsylvania law.

Pennsylvania implies a covenant of good faith and fair dealing in every contract. While this covenant cannot override express contract terms, it does govern the manner in which a party exercises its contractual discretion. Springing a Default Rate claim at payoff — after years of silence during which the borrower made every payment on time and proceeded toward refinancing — is a strong candidate for a bad faith argument. The lender's discretion to invoke Default Rate interest is not unlimited; it must be exercised in good faith.

3. The Lender's Conduct May Constitute Waiver or Estoppel

By continuing to accept payments at the contract rate for an extended period after the guarantor's bankruptcy filing without issuing a notice of default, demanding cure, or communicating any claim to Default Rate interest, the lender's conduct could support arguments of waiver by conduct or equitable estoppel — particularly if the borrower reasonably proceeded toward refinancing in reliance on the lender's silence. Pennsylvania courts have recognized that a lender's course of dealing can modify or waive strict enforcement rights even absent a written waiver, notwithstanding anti-waiver clauses, in appropriate circumstances.

Again, estoppel can overcome a written anti-waiver clause. This is the most important exception in this fact pattern. Pennsylvania recognizes that even where a contract requires waivers to be in writing, a party may be equitably estopped from enforcing a contractual right where:

<!--[if !supportLists]-->• <!--[endif]-->The party engaged in conduct or made representations inconsistent with enforcing that right

<!--[if !supportLists]-->• <!--[endif]-->The other party reasonably relied on that conduct to their detriment

<!--[if !supportLists]-->• <!--[endif]-->Enforcement would be unconscionable under the circumstances

Here the Bank knew of the guarantor's bankruptcy filing, accepted our contracted-rate payments for an extended period without objection, never issued a notice of default, never communicated any claim to Default Rate interest, and allowed us to invest time and resources in a refinancing — only to assert Default Rate interest at the payoff stage.

4. The Automatic Stay Issue

When the guarantor filed bankruptcy, the automatic stay under 11 U.S.C. § 362 would have prohibited the lender from taking collection action against that guarantor's property. The Bank’s decision not to act on the default at all at that time reinforces the waiver/estoppel argument.

5. Proportionality and the Payoff Context

Courts in various jurisdictions have scrutinized the retroactive application of default interest at loan payoff — particularly where the default was a technical, non-payment default, payments were current, and the borrower is now paying off the loan in full. Some courts have found such charges to be unenforceable penalties. Under Pennsylvania case law where a lender attempts to collect that "compensation" retroactively at payoff despite suffering no actual increased risk or administrative burden (because every payment was made timely throughout), a court would most likely find the provision functions as an unenforceable penalty on these facts.

Since we only learned Thursday that a default interest charge has supposedly been accumulating since November of 2023, we ask that Crown Bank remove the associated charge from the payoff letter and accept the principal amount and prepayment penalty due as final payment. Currently, we are expected to close on a new loan next week. We would suffer irreparable financial harm if we were not permitted to make the payoff.

We have had a long relationship that I trust has been positive for your Bank as it was positive for our business. Several months ago we met and suggested we would be happy to continue, but we want to make some investments in the property and looking for additional capital. You simply said the Bank was not interested in extending the loan at that time but would accept the full prepayment penalty. Accordingly, we have obtained several offers from other banks to provide additional funds and meet our commitment to Crown due to the overall strength of the business.

Your consideration on this matter is appreciated and I am hoping we can settle this immediately in the best interest of both parties.

Sincerely,

Matt DeRose (717) 324-0706