# Exhibit H

**Haydn Richards**
Partner
hrichards@bradley.com
(202) 719-8217 direct

Bradley

June 9, 2026

**Via Electronic Mail**
Jacinto Rodrigues, CEO
Crown Bank
Jacinto.rodrigues@crownbank.net

**Re: Demand to Cease Collection of Default Interest for Loan No. 140003149**

Dear Mr. Rodrigues:

My firm represents Heritage Hills Associates, LP (Heritage) in connection with the above-referenced loan from Crown Bank (the Bank). We write to demand that the Bank immediately cease all efforts to collect default interest in connection with the loan, withdraw its assertion that any default interest is owed, and issue a corrected payoff statement that excludes the $1,378,974.68 in default interest claimed in the Bank's May 21, 2026 payoff statement. Our client intends to refinance this loan on **Friday, June 12, 2026** and this is a time sensitive request.

The Bank's stated basis for the default-interest charge appears to be the January 30, 2023 Chapter 7 bankruptcy filing of guarantor Timothy Barley, whose discharge was entered on November 7, 2023. That position is wholly untenable under the circumstances and is set forth in bad faith. Heritage Hills has not missed a scheduled loan payment since the inception of the loan in 2014. The Bank continued to bill and accept regular monthly payments at the ordinary contract rate for more than three years after the bankruptcy filing and for more than two-and-a-half years after discharge. Notably, the Bank did not declare a default, did not accelerate the loan, did not advise Heritage Hills that default interest was accruing, did not demand a replacement guarantor or other credit support, and did not otherwise act as though it considered the loan to be in default. Instead, the Bank induced Heritage Hills to continue performing on the loan in the ordinary course and then asserted, for the first time at payoff, a retroactive default-interest demand approaching $1.4 million.

That course of conduct bars Crown Bank's present position and exposes the Bank to substantial damages (including punitive damages) should it torpedo Heritage's impending refinancing. By billing and accepting payments at the contract rate for years, communicating with Heritage Hills regarding the loan without declaring any default, and withholding any explicit assertion that default interest was accruing until payoff, the Bank waived any claimed right to impose default interest retroactively. The Bank's conduct also equitably estops it from asserting default interest now. Heritage Hills reasonably relied on Crown Bank's conduct and silence in conducting its day-to-day business activities and in arranging new financing. Had Crown Bank promptly asserted that default interest was accruing in 2023, Heritage Hills would have evaluated its options then, including refinancing or addressing any guarantor issue. Crown Bank cannot remain silent while a claimed default-interest charge accumulates and then seek to collect that charge at payoff to extract a windfall.

The Bank's position also violates the implied covenant of good faith and fair dealing. The Bank has suffered no payment default, no collection loss, no impairment of collateral, no increased risk of loss, and no compensable injury. The default-interest provision is framed in the loan documents as compensation for increased risk, monitoring, administration, collection, and difficult-to-ascertain losses. None of those circumstances exist here. Applying a 5% default-rate surcharge retroactively for more than three years on a current loan, based on a guarantor bankruptcy that Crown Bank elected not to address when it occurred, is not a good-faith exercise of contractual discretion.

For the same reasons, the default-interest demand is unenforceable as a penalty under these facts. The Bank is already receiving payment of the outstanding principal, accrued ordinary interest, and the contractual prepayment charge of nearly $400,000, as reflected in the May 21st payoff statement. It cannot also impose nearly $1.4 million in retroactive default interest where there are no apparent actual losses, collection burdens, credit impairments, or enhanced monitoring costs. The magnitude and timing of the demand confirm that it bears no reasonable relationship to any legitimate compensatory purpose.

Accordingly, Heritage Hills demands that the Bank immediately withdraw the asserted default-interest charge, issue a revised payoff statement excluding any default interest, cease all collection efforts relating to default interest, and refrain from asserting in any forum or communication that default interest is owed in connection with this loan. Please provide your written confirmation no later than **close of business on June 10, 2026**, as my client intends to refinance this loan on Friday, June 12, 2026. If the Bank refuses to do so, Heritage Hills reserves all rights and remedies, including seeking declaratory and injunctive relief, damages, attorneys' fees to the extent available, and regulatory relief.

We expressly reserve the right to raise this dispute to the attention of the New Jersey Department of Banking and Insurance and to provide them with the attached analysis of your latest bank call report. This analysis was completed by one of our colleagues who is a former state examiner. The analysis evidences the Bank's weakened financial condition, which we presume is sole reason for your improper assessment of default interest on our client's loan.

Nothing in this letter is intended as, or should be construed as, a settlement offer, a waiver of any claim, right, remedy, or defense, or an admission of any fact or legal position. Heritage Hills expressly reserves all rights.

Sincerely,

Haydn Richards
Partner

cc: eabraham@hillwallack.com
nbyrne@hillwallack.com

Bradley

**MEMORANDUM**

TO: Haydn Richards, Partner

FROM: Rich Cortes

DATE: June 9, 2026

SUBJECT: Crown Bank Analysis

This is an analysis of Crown Bank's 12/31/2025 bank call report. The bank is located in Elizabeth, New Jersey and has FDIC Certification Number 34259. The bank has an asset size of $629 million with $163 million in equity. It is primarily a commercial lender with a 94% concentration in Construction and Development and Non-Farm Non-Residential real estate sectors. At year-end 2025, the company had net income of $22 million and issued $12 million in dividends.

Loans totaling $508 million comprise 81% of Total Assets with $271 million pledged and not available for liquidity purposes. Nonaccrual loans totaling $42 million are 8% of Total Loans. Additionally, the balance sheet holds another $6 million in Other Real Estate Owned. This means that approximately 7% of the balance sheet is made up of nonearning assets. Assuming a conservatively low 9% rate on these assets when they were loans, the bank is not collecting approximately $4 million in interest. Additionally, the costs related to carrying nonearning assets can cause downward pressure on earnings.

Earnings are primarily earned from the loan portfolio which represented 91% of interest income. Year-end net income totaled $22 million or 3.41% Return on Assets (ROA). The Allowance for Loan and Lease Losses (ALLL) is underfunded at just 0.64% of loans and should be closer to 1% - 1.25% on past-due with a higher percentage on nonaccruals. The level of past due/nonaccrual loans is inordinately high at approximately 8%. The ROA is not likely to continue given the bank's issues with past due loans and an underfunded ALLL. The majority of past due/nonaccrual loans are commercial real estate development loans or commercial land loans. These assets incur significant costs to administer, foreclose, hold, and dispose of. The ALLL will require additional provisions to protect capital levels. As more of these loans become past due and eventually nonearning assets, the ability to produce sufficient cash flow to cover operations, fund the ALLL, and augment capital will be severely hampered.

Total deposits are $443 million. The bank has $126 million, or 28%, in brokered and time deposits maturing within one year. These types of deposits generally carry a higher than market rate to attract and are considered highly volatile. The retention of these accounts is predicated on continuing to pay these high rates or alternatively, letting them run off. This can cause a liquidity crisis if sufficient liquid funds are not available to cover. Additionally, the bank has another $40 million in unfunded commitments that may require funding at any time. My review of the available data does not show sufficient liquid balance sheet assets to meet these obligations.

In conclusion, my analysis indicates that the bank is a commercial real estate development and commercial real estate lender whose loans show a high level of past-due/ nonaccrual and has a significantly underfunded ALLL. Earnings are primarily derived from making loans but will experience continued downward pressure as costs of nonearning assets continue to increase. The deposit structure shows a significant amount of volatile deposits coming due within one year with what I perceive to be insufficient liquidity. The bank is approaching a critical point where continued deterioration of the loan portfolio will eventually cause critical capital erosion.

It is possible that the bank's behavior related to the loan in question is due to its need to maintain income producing assets on the books. An added issue would be that the reduction of performing loans would make the past-due/nonaccrual ratios look worse.